UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **TRACIE HANNAH,**<br>**CHERYL ROBINSON** and<br>**RYAN WILLIAMS,**<br><br>                    Plaintiffs,<br><br>    vs.<br><br>**CITY OF DETROIT,**<br><br><br>                    Defendant. | **19-CV-12600-TGB-SDD**<br><br><br><br>**ORDER GRANTING**<br>**DEFENDANT'S MOTION FOR**<br>**SUMMARY JUDGMENT** |

In 2008, before the construction of Little Caesar's Arena ("LCA"), home to the Detroit Pistons NBA basketball team and the Detroit Red Wings NHL hockey team, Plaintiffs Tracie Hannah, Cheryl Robinson, and Ryan Williams were operating as licensed street vendors along Woodward Avenue in Detroit, Michigan.  When construction of the LCA began in 2015, Plaintiffs were told by the City of Detroit that their licenses would not be renewed during construction and once LCA was fully operational. Plaintiffs brought the instant lawsuit against the City of Detroit, the Business and Licensing Department for the City of Detroit, the Building Safety Engineering and Environmental Department for the City of Detroit, and Olympia Entertainment, Inc. ("Olympia")—the alleged operator of LCA. Olympia has since been dismissed from the case. ECF No.

1

17. The City's departments are not legally separate from the City itself, so the remaining Defendant is the City of Detroit.[1] Before the Court is Defendant's Motion to Dismiss, or alternatively for Summary Judgment. ECF No. 28.

## I.   Background

Plaintiffs are licensed street vendors who operated on the corners running from Henry and Woodward to Sibley and Woodward in Detroit, Michigan from early 2008 to 2017. ECF No. 5, PageID.17. Plaintiffs allege that in 2016-2017 they were informed that their vendor licenses would not be renewed due to the construction of LCA. *Id*; ECF No. 15-1. Plaintiffs claim they were told the licenses would not be renewed because they were operating within 300 feet of the arena, because it was an unsafe area, and because the relevant sidewalks where they worked would be closed to the public. *Id*. at PageID.17-18. Plaintiffs claim that once LCA opened on September 5, 2017, these reasons were revealed to be false and misleading and that in fact the sidewalk was accessible, open, and used by the public. *Id*. A few days after the arena opened, Plaintiffs allege that Williams attended a weekly Detroit City Council meeting and expressed the Plaintiffs' concerns about the City's decision not to renew

---

[1] *See Haverstick Enterprises, Inc. v. Fin. Fed. Credit, Inc.,* 803 F. Supp. 1251, 1256 (E.D. Mich. 1992), *aff'd,* 32 F.3d 989 (6th Cir. 1994) (citing *Michonski v. City of Detroit*, 162 Mich. App. 485, 413 N.W.2d 438 (1987) (public lighting department is not separate legal entity against whom tort action may be brought).

the vendor licenses. *Id.* He explained that the sidewalk was still open and that the Building Safety and Engineering Department should not have denied the licenses. *Id.* Plaintiffs allege that shortly after Williams voiced these concerns, Olympia "closed the public sidewalk and installed barriers that prevented the Vendors from servicing the Woodward street area in effect[,] retroactively giving cover to the false claim made by the Building Safety and Engineering Department regarding the closure of the sidewalk." *Id.* at PageID.18. Plaintiffs then brought the instant lawsuit against Defendants, the City of Detroit, the Business and Licensing Department for the City of Detroit, and the Building Safety Engineering and Environmental Department for the City of Detroit alleging that the City's denial of their vendor licenses violated their rights to equal protection and due process under the Fifth and Fourteenth Amendments of the United States Constitution. ECF No. 1. One month later, Plaintiffs filed an amended complaint, adding Olympia, and alleging the same constitutional claims. ECF No. 5. Olympia moved to dismiss the complaint (ECF No. 12), and this Court entered an Order for dismissal with prejudice (ECF No. 17), finding that Plaintiffs failed to allege sufficient facts to show that Olympia acted under the color of state law. The City of Detroit now moves to dismiss the complaint (ECF No. 28), arguing that Plaintiffs' claims fail to state a claim a upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), or alternatively, requesting summary judgment dismissing all of Plaintiffs' claims pursuant to Fed. R. Civ. P. 56.

## II.   Legal Standards

### A. Motion to Dismiss

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Motion for Summary Judgment

Alternatively, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013);

*see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001). The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

## III.   Analysis

Plaintiffs' complaint seeks to bring claims against the City for revoking their vendor licenses to sell products near Little Caesar's Arena in violation of the Fourteenth and Fifth Amendments. The City correctly notes that Plaintiffs have failed to cite to § 1983, which is the exclusive remedy for an individual's right to sue the state for civil rights violations. *See Foster v. Michigan,* 573 F. App'x 377, 391 (6th Cir. 2014).  However, in the interest of justice, the Court reads Plaintiff's complaint as amended to state an actionable claim. For the reasons explained below, the Court finds that Plaintiffs' constitutional claims would fail on their

merits even if Plaintiffs had properly raised them under 42 U.S.C. § 1983. Therefore, Plaintiffs' request to amend will be denied as moot and the complaint dismissed as a matter of law because it fails to state a claim upon which relief can be granted and because there is no genuine issue of material fact.

## A. Violation of the 14th Amendment Equal Protection Clause (Count I)

In their complaint, Plaintiffs allege that the City's "arbitrary and capricious application" of City Ordinance Section 34-1-9(b) violates their "rights to renew their yearly stationary vendors license while other vendors situated in similar circumstances were allowed continued renewal, thereby in violation of the 14th Amendment Equal Protection clause." ECF No. 5, PageID.19.  In their response to Defendant's motion, Plaintiffs have attempted to fashion a new claim that the Ordinance is unconstitutional, or alternatively should be analyzed under strict scrutiny, due to a clause in Section 34-1-9(b) that gives stadium owners the authority to approve vendor licenses within 300 feet of their facility. ECF No. 32, PageID.319.

The Equal Protection Clause of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).

6

Because in this situation there are "no suspect classifications or funda-mental rights" at issue, the application of the Ordinance must be viewed under a rational basis analysis. *See Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). A "class of one" may bring an equal protection claim, "where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir.2005) (citing *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).

Therefore, to prevail on their equal protection claim, Plaintiffs must show that (1) the City treated Plaintiffs differently from a similarly situ-ated party, and (2) the City had no rational basis to do so. *See EJS Prop-erties, LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012).

"When evaluating whether parties are similarly situated, 'courts should not demand exact correlation but should instead seek relevant similarity.'" *Id.* at 864-65 (quoting *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir.2000)). "Regarding rational basis, a plaintiff can establish the lack of a rational basis if it either (1) negat[es] every conceivable basis which might support the government action or [(2)] demonstrat[es] that the challenged government action was motivated by animus or ill-will." *Id.* at 865 (internal quotations and citations omitted).

On the record before the Court, Plaintiffs have failed to demonstrate that the City treated them differently from similarly situated individuals.  Although Plaintiffs generally assert that the City has renewed the licenses of other similarly situated vendors, Plaintiffs have not identified *any* such renewed vendors who are not also restricted by the 300-foot threshold and have also failed to show how any of these renewed vendors are similarly situated to Plaintiffs. *See Silver*, 966 F.2d at 1036–37. The City states it has not issued stationary vendor's licenses to Plaintiffs, or any other applicants, for the sidewalks on the west side of Woodward Avenue across from LCA since the construction of the Arena began.[2] ECF No. 28, PageID.166-67. Plaintiffs have not presented any information disputing this fact and Plaintiffs retain the right to apply for stationary vendor licenses at other locations in the City like any other vendor.

Because Plaintiffs have failed to meet the first prong, the Court need not conduct a rational basis analysis. With respect to Plaintiffs' argument in its response that the Ordinance is "unconstitutional on its face because it arbitrarily allows non-state business entities to make decisions as it relates to tax paid public spaces," or alternatively that strict scrutiny should be applied, the Court finds this argument untimely and

---

[2] Defendant acknowledges that due to an error, the City initially issued licenses to vendors to operate in the contested area in front of LCA, but once the error was discovered, the licenses were cancelled and the fees refunded. ECF No. 28, PageID.185.

8

unpersuasive. Plaintiffs argue that Section 34-1-9(b)[3] must be analyzed under strict scrutiny because profit-seeking businesses with "enormous power" should not be permitted to choose who operates near their businesses. ECF No. 32, PageID.319. Plaintiffs  suggest that "corruptive possibilities are especially likely . . . especially where Olympia is involved," alleging that Olympia failed to meet a 50% minority participation agreement. *Id.*

First, Plaintiffs' have raised this claim for the first time in response to Defendant's motion for summary judgment, which the Sixth Circuit has clearly prohibited. *See, e.g., West v. Wayne Cty.*, 672 F. App'x 535, 541 (6th Cir. 2016); *Powell-Lee v. HCR Manor Care*, 231 F. App'x 43, 440 (6th Cir. 2007) (rejecting plaintiff's attempt "to amend her complaint via argument in opposition to the motion for summary judgment"); *Rafferty v. Trumbull Cty., Ohio*, 758 F. App'x 425 , 429 (6th Cir. 2018) (A district court does not err by failing to consider a claim that a plaintiff does not raise until their response to a motion for summary judgment) (internal citations omitted). Allowing Plaintiffs to raise new theories at this late stage would deny Defendant sufficient notice of what claims to investigate. *Id.* (internal citations omitted).

Second, even if this Court were to allow these new claims at this late stage, Plaintiffs' allegations regarding possible corruption by Olym-

---

[3] The text of this City Ordinance is provided below on page 13.

pia are merely speculative. Such conclusory allegations are improper under both Rules 12(b)(6) and 56. The Court could not reasonably infer that the City engaged in corrupt conduct, giving rise to strict scrutiny based on the facts alleged, nor are such allegations sufficient to give rise to a genuine issue of material fact for trial.  Plaintiffs have had ample time since discovery to amend the complaint and raise additional theories, and yet refrained from doing so. Because Plaintiffs have both failed to demonstrate how the City treated Plaintiffs differently from a similarly situated party and offer no evidence of corruption, this claim is dismissed.

## B. Violation of the 14th Amendment Due Process Clause (Count II)

Plaintiffs also claim the City denied them "substantive due course of law" and a "right[] to earn a living" in violation of the Due Process clause under the Fourteenth Amendment.  ECF No. 5, PageID.20. As evidence, they point to the City's allegedly arbitrary use of the 300-foot limit as an "excuse" to deny the renewal of Plaintiffs' vendor licenses. *Id*. Plaintiffs also allege there is a genuine dispute as to whether Plaintiffs' stationary locations were "within the arbitrary 300 ft. threshold." *Id*.

Under the Fourteenth Amendment, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process clause has both procedural and

substantive components, but Plaintiffs appear to have raised only a substantive due process claim in their pleadings, so the Court's analysis will proceed accordingly. *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (internal citations omitted).

To state a substantive due process claim a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) such interest has been deprived through arbitrary and capricious action." *EJS Properties*, 736 F. Supp. 2d at 1136 (internal citations omitted); *see also Silver*, 966 F2d at 1036 ("To establish a violation of substantive due process, a plaintiff *must first establish* the existence of a constitutionally-protected property or liberty interest.") (emphasis added); *Andreano v. City of Westlake*, 136 F. App'x. 865, 871 (6th Cir.2005) (unpublished disposition) ("In the absence of a constitutionally protected [property or liberty] interest, arbitrary and capricious conduct will not support a substantive due process claim.").

The Constitution does not create or define property interests. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Whether a person has a "property" interest is traditionally a question of state law. *EJS Properties*, 698 F.3d at 855 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) ("The hallmark of property . . .  is an individual entitlement grounded in state law."). However, "[a]lthough the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the

11

level of a legitimate claim of entitlement protected by the Due Process Clause." *Id*. at 856 (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (internal quotation marks omitted)); *see also Roth*, 408 U.S. at 571–72. For example, "a job or government benefit is a property interest if there are 'rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to' it." *Kaplan v. Univ. of Louisville*, 10 F.4th 569 (6th Cir. 2021) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). But neither a "unilateral expectation" to enjoy the alleged property interest nor an "abstract need or desire for it" is enough. *Roth*, 408 U.S. at 577.

The Sixth Circuit uses an "entitlement test" to determine whether an alleged property right is protected under the Fourteenth Amendment. Under that test, a protectible property right exists only if Plaintiffs have a "legitimate claim of entitlement" or a "justifiable expectation" in the continued renewal of their vendor license. *See Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir. 2005); *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202–03 (6th Cir.1995); *Silver*, 966 F.2d at 1036; *G.M. Eng'rs & Assocs., Inc. v. W. Bloomfield Township*, 922 F.2d 328, 331 (6th Cir.1990).

Michigan law has not established whether ownership of a vendor license, subject to city ordinance requirements, is a property interest sufficient to invoke due process. Thus, we must look to the Ordinance to

determine whether a legitimate claim of entitlement or a justifiable expectation exists. *See Silver*, 966 F.2d at 1036 (citing *Roth*, 408 U.S. at 577); *Andreano,* 136 F. App'x at 871. For the reasons explained below, the Court finds Plaintiffs do not have a protected property interest in the continued renewal of their vendor licenses. And, even if they did, the Ordinance's process governing the grant or denial of such licenses is rationally related to a legitimate government interest.

Sections 34-1-5(t) and (u) of the Detroit City Code provide:

(t) The Director of the Buildings, Safety Engineering, and Environmental Department is authorized to designate such other streets, sidewalks, parts of streets or sidewalks, districts, or areas where it shall be unlawful for any vendor to operate or conduct the vendor's business, for the reason that, due to congested traffic conditions or the character of the neighborhood, the conduct of such business constitutes a public nuisance or, upon the recommendation of the Public Health Director, the conduct of such business constitutes a hazard to public health.

(u) The Buildings, Safety Engineering, and Environmental Department, the Health Department, or the Police Department may prohibit the sale of any items where it is determined that the sale of such items on City streets, sidewalks, or parts of streets or sidewalks would jeopardize the health, safety or general welfare, or be damaging or detrimental to properties adjacent to, or in the vicinity of, the vending location.

Section 34-1-9(b) also states:

Vending locations for approved removable stands or food pushcarts that are ***within 300 feet*** from any sports arena or stadium shall not be approved by the Buildings, Safety Engineering, and Environmental Department Business License

13

> Center without the written approval of the owner or manage-
> ment of such sports arena or stadium.

(emphasis added.)[4] First, the stationary vendor cart approvals are re-
quired every year before a license is issued. This means vendors are
aware a renewal license is not guaranteed if the circumstances surround-
ing their vendor stations changes. And in this case, changed circum-
stances included land development near the vendors' station, resulting
in the location of their stations being prohibited by the Ordinance.  Sec-
ond, the Ordinance expressly grants the City the authority to deny a li-
cense where the vendor's requested location is within 300 feet of any
sports arena. Third, the denial of the vendor license rested on the prox-
imity of the vendor to the LCA, it was not a general denial of a license to
sell. Unlike license revocations that could cause significant barriers to
the maintenance of a stationary business or be detrimental to a brick-
and-mortar merchant's livelihood, a revocation under 34-1-9(b) allows
Plaintiffs to seek relocation of their station elsewhere.

Thus, the former operation of their vendor stations in the contested
area along Woodward Avenue near LCA does not appear to give rise to a
vested property interest in continuing to do so. *Triple A Servs., Inc. v.
Rice,* 131 Ill. 2d 217, 237, 545 N.E.2d 706, 714 (1989). There is no "inher-

---

[4] Plaintiffs also received a denial of license renewal letter from the City,
citing to Detroit City Code Ordinance Section 41 et. seq, that appears to
say the same. ECF No. 15-1.

14

ent right to use the streets or highways for business purposes." *Id*. (quoting *City of Decatur v. Chasteen* (1960), 19 Ill.2d 204, 211–12, 166 N.E.2d 29. The City cites to a string of cases from state courts in neighboring jurisdictions that affirm the same. *See LMP Services, Inc v City of Chicago*, 95 NE3d 1259, 1271 (Ill App Ct, 2017), *aff'd* 160 NE3d 822 (Ill, 2019) ("no individual has the constitutional property right to conduct business from the streets or sidewalks located within the state of Illinois"). *Scott v City of Pittsburgh*, 903 A2d 110, 113–15 (Pa Commw Ct, 2006) ("Vendor has a general license that permits him to operate a vending business in the City, but does not entitle him to operate in his customary site outside the library.").

Plaintiffs argue that the present case is distinguishable from those cited by Defendant, because here, Plaintiffs' "licenses were attached to a specific location and not just a previously occupied space," where as in the cases relied upon by Defendant, the plaintiffs possessed mobile and/or city wide vending licenses. ECF No. 32, PageID.313. But this argument is unpersuasive. It matters not whether the license is for a stationary vendor or a mobile vendor. In each of the cited cases, the court determined that vendors did not have a protected property interest in using public streets to sell items. In some cases, the courts also took into consideration that the vendors did not pay property taxes or fees generally

associated with brick-and-mortar businesses, and as such the same interests or rights were not invoked when considering the non-renewal of those licenses.

More importantly, Plaintiffs do not cite to any case law that would support a finding that they are entitled to conduct their vending businesses in a particular customary location. "It is well established that in attempting to resist summary judgment, '[a] plaintiff cannot simply sit back and highlight deficiencies in the defendant's argument without providing some affirmative support for its own position.'" *Dog Pound, LLC v. City of Monroe*, 913 F. Supp. 2d 426, 435 (E.D. Mich. 2012) (quoting *Newell Rubbermaid, Inc. v. Raymond Corp.,* 676 F.3d 521 (6th Cir. 2012)).

Finally, even if Plaintiffs were found to have a protected property interest, "[t]he administrative action will withstand substantive due process attack unless it is not supportable on any rational basis or is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *Andreano*, 136 F. App'x at 872 (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992) (internal quotations omitted)). To successfully challenge a legislative enactment subject to rational basis review, Plaintiffs must "negative every conceivable basis which might support it." *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 690 (6th Cir. 2011) (citing *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973) (internal quotations

16

and citations omitted). "Under rational basis review, it is 'constitution-ally irrelevant [what] reasoning in fact underlay the legislative decision.'" *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) (alteration in original) (quoting *R.R. Ret. Bd. v. Fritz,* 449 U.S. 166, 179 (1980)). "[W]e will be satisfied with the government's 'rational speculation' linking the regulation to a legitimate purpose, even 'unsupported by evidence or empirical data.'" *Id.* (quoting *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993)). Thus, if a statute can be upheld under any plausible justification offered by the state, or even hypothesized by the court, it survives rational-basis scrutiny. *See Berger v. City of Mayfield Heights,* 154 F.3d 621, 624–26 (6th Cir. 1998) (speculating as to the City Council's possible motivations for passing the challenged ordinance); *Am. Exp. Travel Related Servs. Co,*. 641 F.3d at 690.

Here, the City has asked the Court to take "judicial notice that the eastern boundary of the construction site, Woodward Avenue, is one of most important and heavily-traveled thoroughfares in the City of Detroit." ECF No. 28, PageID.170 (citing *Matter of Search of Information Stored at Premises Controlled by Google*, 481 F. Supp. 3d 730, 743 (N.D. Ill 2020) (court took judicial notice that area at issue was "situated within a busy commercial area on a major arterial street in a major U.S. city[.]")). The City points out that LCA has a seating capacity of up to 20,332 attendees and that the "sidewalks on the west side of Woodward

17

are narrow–in many areas only approximately 6–8 feet wide—and pedestrian movement is further constrained by the presence of large planting areas and a 'Q-Line' (or 'M-1 Rail') station in the same area." ECF No. 28, PageID.170 (citing ECF No. 184-2; 184-4). Accordingly, the City asserts that the Ordinance's 300-foot requirement serves as a public health and safety measure given the "potential for congestion and potential danger if Plaintiffs were to set up their own vendor stations on the sidewalk." *Id.* at PageID.170-71. Although Plaintiffs challenge whether Ms. Hannah's requested vendor location actually fell within the 300-foot zone, the City provides proofs indicating that the location was well within the 300-foot restriction, which Plaintiffs do not dispute. *See* ECF Nos. 28-3; 28-5. The City was not required to verify the distance in the presence of Plaintiffs. Indeed, Plaintiffs were capable of conducting their own measurements, but on the record before the Court they have not done so.

Accordingly, Plaintiffs have not presented evidence showing that their requested locations were outside of the 300-foot zone and the Court finds that  the City's Ordinance serves a legitimate government interest. Protecting the safety of its citizens is a legitimate interest and implementing a 300-foot restriction is rationally related to promoting that interest. By preventing vendors from operating in close proximity to the sports arena, the City can reduce pedestrian congestion and more effectively monitor the sidewalks and roadways. The fact that Plaintiffs had previously been located across from Comerica Park (the baseball stadium

18

for the Detroit Tigers) prior to the construction of LCA is irrelevant. The record does not indicate that Plaintiffs' vending stations were within or outside of the 300-foot zone of the baseball park. Even if the Ordinance gives a benefit to owners of sports arenas in having authority to approve or disapprove of vendors within the 300-foot limit, case law holds that a City is justified in protecting the interests of its brick-and-mortar businesses.  Moreover, as long as a rational basis supports the regulation, the City's underlying intentions have been held to be irrelevant. *See Dog Pound, LLC v. City of Monroe*, 913 F. Supp. 2d 426, 433-34 (E.D. Mich. 2012).

### C. Violation of the 14th Amendment Protectionism (Count III)

Plaintiffs also allege a protectionism claim, asserting that Defendant, in denying their right to renew their vendor licenses, "intentionally gave Ilitch Holdings Inc., (the owner of Defendant Olympia Entertainment) an unfair advantage in the cloud of imminent domain." ECF No. 5, PageID.21.  Additionally, Plaintiffs allege that Defendant protected Olympia Entertainment and unreasonably interfered with Plaintiffs' rights to earn a living by refusing to renew their yearly stationary vendor license. ECF No. 5, PageID.21.

"The modern law of what has come to be called the dormant Commerce Clause is driven by concern about economic protectionism." *Dog Pound, LLC v. City of Monroe*, Mich., 558 F. App'x 589, 593 (6th Cir. 2014)

19

(quoting *Dep't of Revenue of Ky. v. Davis,* 553 U.S. 328, 337, 2008) (internal quotation marks omitted). This doctrine is designed to ensure that a state cannot, "build up its domestic commerce by means of unequal and oppressive burdens" placed upon out-of-state businesses. *Id.* (quoting *Guy v. City of Baltimore,* 100 U.S. 434, 443 (1879)). "The question under the dormant Commerce Clause is not whether local, brick-and-mortar businesses are being supported at the expense of local itinerant vendors, but whether the Ordinance favors in-state businesses over out-of-state businesses." *Id.*

No such concerns exist in this case. As Defendant notes, because the Fourteenth Amendment does not provide a generalized "protectionism" clause prohibiting laws that protect one kind of merchant over another within a state, Plaintiffs fail to state a viable cause of action. Plaintiffs do not allege that the Ordinance imposes disparate treatment between in-state and out-of-state vendors.  Instead, Plaintiffs allege that a particular company, or brick-and-mortar merchant, has been granted an advantage over sidewalk merchants.

Kevin Jones, Manager of the City's Business License Center, stated that the 300-foot limitation:

> rationally serves a legitimate governmental interest in providing some level of protection to stadium operators-who pay property taxes (which are a significant source of revenue to the City) and/or rent and employ hundreds or thousands of workers, and contribute to a strong, prosperous and stable business community-against sidewalk vendors, who do not

pay property taxes or rent, employ far fewer workers, and con-
stitute an unstable business community.

ECF No. 28-2, PageID.195. Even if this statement admits "protect[ing] .
. . local brick-and-mortar businesses as one motive for the [O]rdinance,"
courts have recognized such a purpose as a legitimate government inter-
est. *Dog Pound, LLC v. City of Monroe*, 913 F. Supp. 2d 426, 433-34 (E.D.
Mich. 2012). Since Plaintiffs allege no facts in support of their dormant
Commerce Clause claim, there cannot be a genuine dispute as to any ma-
terial fact. *See One World One Family Now v. City and County of Hono-
lulu,* 76 F.3d 1009, 1013 (9th Cir.1996) (citing *Turner Broadcasting Sys.,
Inc. v. FCC,* 512 U.S. 622 (1994)) (finding that a motive of protecting res-
ident merchants from competition from sidewalk merchants who paid
neither rent nor taxes was legitimate)).

## D. Violation of the Fifth Amendment Due Process Clause (Count IV)

Plaintiffs also allege the City violated their Fifth Amendment due
process rights by preventing them from renewing their yearly stationary
vendor licenses near Henry St. and Woodward Ave. and the Sibley St.
and Woodward Ave. area in Detroit, Michigan, "without a legally justifi-
able reason in violation of the 5th Amendment due process clause." ECF
No. 5, PageID.22.

The Fifth Amendment's Due Process clause, however, "applies to
federal action, not to private action or state action." *Exclusive Brands
LLC v. City of Garden City, Michigan, 2020 WL 5367331,* at *\*10 (E.D.*

21

*Mich. Sept. 8, 2020) (*citing *Haverstick Enter., Inc. v. Fin. Fed. Credit, Inc.*, 803 F. Supp. 1251, 1259 (E.D. Mich. 1992), *aff'd*, 32 F.3d 989 (6th Cir. 1994) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)); 1 Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation* § 2.03 (3d ed. 1991) ("[O]n its face, Fifth Amendment applies only to federal government; Fourteenth Amendment applies to states."). Plaintiffs here do not say, nor could they with any plausibility, that the Defendant City of Detroit is associated with the federal government. Thus, Plaintiffs have no claim for violation of the Fifth Amendment. Accordingly, Plaintiffs' substantive due process claim under the Fifth Amendment is dismissed.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' request to amend their complaint is **DENIED** as moot, Defendant's motion for summary judgment is **GRANTED**, and the case is **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

Dated: March 21, 2022    s/Terrence G. Berg
_____
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE